# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID HATCHIGIAN** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-2382 |
| | : | |
| **CAPITAL ONE, N.A.** | : | |

**McHUGH, J.**                                                                                November 27, 2024

## MEMORANDUM

This *pro se* civil action arises out of two credit-related disputes: (1) Plaintiff David Hatchigian's unsuccessful efforts to authenticate a new Capital One credit card ("the -8219 credit account"), and (2) a charge on Plaintiff's existing Capital One account he purportedly disputed ("the -1249 credit account").[1] As to the first claim, the dispute involves a card Plaintiff contends he never requested, and whatever frustration he encountered trying to activate the card does not give rise to any cognizable cause of action. As to the second claim, he paid the charge in full, and did not dispute the charge until this litigation, beyond the 60-day window provided by statute, in a vain attempt to salvage a meritless case. Defendant Capital One's motion to dismiss will be granted in its entirety.

---

[1] Plaintiff is a serial litigator. *See Hatchigian v. Chase Bank*, No. 21-3416, 2022 WL 4080768, at *1 n.1 (E.D. Pa. Sept. 6, 2022) (Kenney, J.) (collecting cases that Plaintiff has filed in the Eastern District of Pennsylvania: *Hatchigian v. Sklar Law Office*, 22-cv-2866; *Hatchigian v. PECO/EXELON Energy Co.*, 22-cv-2170; *Hatchigian v. Powertrain Products Inc.*, 21-cv-5601; *Hatchigian v. Matthews Paoli Ford*, 21-cv-4643; *Hatchigian v. Carrier Corp.*, 21-cv-2562; *Hatchigian v. German Gallagher & Murtagh*, 20-cv-6204; *Hatchigian v. Carrier Corp.*, 20-cv-4110; *Hatchigian v. AAA Mid-Atlantic Member Relations*, 19-cv-04740; *Hatchigian v. Kaplan Stewart Meloff Reiter & Stein PC*, 17-cv-3156; *Hatchigian v. Kaplan Stewart Meloff Reiter & Stein*, 16-cv-2987; *Hatchigian v. State Farm Ins. Co.*, 13-cv-2880; *Hatchigian v. Nat'l Electric Contractors Ass'n*, 12-cv-5297; *Hatchigian v. Montgomery County*, 07-cv-5068).

1

I.     **Facts as Pled**

Plaintiff is a Capital One customer with a credit account ending in -1249. In May 2023, Plaintiff received a new Capital One credit card ending in -8219. Compl. ¶ 5. Despite alleging that he had not requested the -8219 card, Plaintiff sought to activate it. *Id.* Unable to do so, Plaintiff corresponded with Capital One's customer service department over the course of several months. *Id.* ¶ 6. On September 5, 2023, Capital One closed the -8219 credit account for "failure to provide identification."[2] *Id.* ¶¶ 6-7. Then, in February 2024, Plaintiff received a statement for a separate Capital One account – the -1249 card – containing an allegedly erroneous charge from Microsoft. Plaintiff paid that charge in full. *Id.* ¶¶ 10, 24; ECF 1-1 at 56-57.[3]

Plaintiff asserts that Capital One's closure of the -8219 credit account caused him financial harm, as it "could not be utilized to pay emergent personal expenses, including ongoing court costs and filing fees in pending litigation during the period he was without any account access." *Id.* ¶ 8. Plaintiff further contends that closure of the -8219 account "required the filing of a municipal court claim, consuming time off from work as a journeyman electrical contractor to prosecute the

---

[2] At various points in his Complaint, Plaintiff appears to allege that his unsuccessful efforts to authenticate the -8219 credit card resulted in the closure of *all* of Plaintiff's Capital One accounts, including his -1249 account. But Plaintiff's own filings show that the -1249 credit account was working throughout the period in which the -8219 account could not be activated. *See* Compl. ¶ 7 (a Capital One employee "confirmed that the unsolicited New Card was cancelled and that [Plaintiff's] existing credit account was intact and open"); *id.* ¶ 11 ("The New Card ending in -8219 was never requested and the card ending [in] -1249 had not been reported lost or stolen"); *id.* ¶ 20 ("At all relevant times, payments on the -1249 account were current and up to date"); Credit Card Statement, ECF 1-1 at 26 (-1249 account statement for December 2023/January 2024); Credit Card Statement, *id.* at 42 (-1249 account statement for June/July 2023); Transcript of Municipal Court Hearing, *id.* at 91 ("I called [Capital One], and I said, is the -8219 card good, they said no, but the other one is"); Pl.'s Opp'n Br., ECF 8 at 19 (asserting that he used the -1249 card to "mitigate his damages").

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

claim" and "exposed [Plaintiff] to delinquent bills, increased costs, fees, penalties and the potential forfeiture of the value in pending legal claims." [4] *Id.* ¶¶ 9, 11.

Plaintiff commenced this matter in Philadelphia Municipal Court. During a February 2024 hearing, the judge inexplicably and with no apparent legal basis awarded Plaintiff $589.75 for "pain and suffering."[5] Defendant appealed the judgment to the Philadelphia Court of Common Pleas, and removed it once Plaintiff filed a formal complaint.

Mr. Hatchigian advances claims under the Truth in Lending Act, the Fair Credit Billing Act, and the Electronic Funds Transfer Act, as well as state law claims for breach of contract, breach of fiduciary duty, negligence, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. For the following reasons, I will grant Defendant's Motion to Dismiss on all counts.

## II.  Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

---

[4] The Court notes that Plaintiff was in no respect "required" to file this baseless lawsuit.

[5] The Municipal Court Judge was initially skeptical of Plaintiff's claim. *See* Transcript of Municipal Court Hearing, ECF 1-1 at 90 ("You said something very curious to me, Mr. Hatchigian, that you did not ask for the card, and then [attempted] to validate it, so you can't have it both ways. So, I am eliminating the issue regarding the card -8219. You are asking for money that you could have used for money up to $5,000, and it appears to me that Capital One actually satisfied you, maybe not with the [-8219 card], but with [the] -1249 [card].)" This common sense observation should have been sufficient to resolve the case. Instead, the Judge changed course. *See id.* at 92-94 ("I wish I could say to Capital One, give him $500 bucks to say, on his credit card to make him whole, I think that because of that confusion, actually, I am going to say that, I am going to ask damages because of the confusion between customer service and Mr. Hatchigian that Capital One does pay Mr. Hatchigian for all of his troubles, because he is trying to do the right thing and I think there is perhaps [] an unfair advantage taken by Capital One not understanding, and I think that is a reasonable solution to this problem. So, I am going to award [Plaintiff] $500 [plus court costs] . . . [as] damages for you[r] pain and suffering with the customer service.").

Because Plaintiff is *pro se*, the Complaint is held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and the Court must "liberally construe" the pleadings. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citations omitted). Nonetheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. Discussion

#### A. Truth in Lending Act

Plaintiff alleges that Capital One violated the Truth in Lending Act ("TILA") by failing to properly disclose their "dysfunctional rules for unsolicited New Cards." Compl. ¶ 33. Plaintiff contends that Capital One's failure to disclose "material credit terms" resulted in "increased costs" when he was unable to authenticate the -8219 credit account. *Id.* ¶¶ 34, 36.

The TILA is a disclosure statute aimed at "protect[ing] the consumer against inaccurate and unfair credit billing and credit card practices." *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006) (quoting 15 U.S.C. § 1601). To plead a claim under the TILA, a plaintiff must identify a specific provision. "Alleging a violation of the TILA in a complaint without specifying the specific TILA section or subsection is insufficient to state a plausible claim." *Rankin v. Saldutti, LLC*, No. 19-1508, 2020 WL 256433, at *6 (E.D. Pa. Jan. 17, 2020) (Slomsky, J.); *Speicher v. Rocket Mortgage, LLC*, No. 22-4284, 2023 WL 2890154, at *6 (E.D. Pa. Apr. 11, 2023) (Leeson, J.).

Here, Plaintiff broadly invokes the TILA, contending that Capital One failed to disclose its policies involving new credit cards in violation of "15 U.S.C. § 1601 et seq." Compl. ¶¶ 36, 38. In failing to plead which provisions of the TILA confer a cause of action, Plaintiff has not stated a

cognizable claim. Nor can I ascertain any basis for a TILA claim. This claim will therefore be dismissed with prejudice.

### B. Fair Credit Billing Act

Plaintiff contends that Capital One violated the Fair Credit Billing Act ("FCBA") by failing to resolve a purported billing error – the Microsoft charge – on his -1249 credit account. Plaintiff asserts that Capital One "failed to mail or deliver written acknowledgment to Plaintiff within 30 days of receiving notice that the wrong card was charged . . . failed to determine that a billing error had occurred[,] and failed to resolve the billing error within two complete billing cycles." Compl. ¶¶ 42, 44.

The FCBA amended the Truth in Lending Act, "[b]uilding on TILA's original goal of requiring full disclosure of credit charges . . . and protect[ing] the consumer against inaccurate and unfair credit billing and credit card practices." *Krieger v. Bank of America, N.A.*, 890 F.3d 429, 433 (3d Cir. 2018) (quoting 15 U.S.C. § 1601(a)) (cleaned up).[6] Creditors have an obligation under the FCBA to correct billing errors, including purchases not made by the consumer, charges in the wrong amount, and charges for goods not received. 15 U.S.C. § 1666(b). "To trigger a creditor's obligation either to credit a disputed charge or to conduct a reasonable investigation into the matter, a consumer must submit a written notice of billing error within 60 days after receiving the statement that contains the error." *Krieger*, 890 F.3d at 437 (citing 15 U.S.C. § 1666(a)); *see also Dimedio v. HSBC Bank*, No. 8-5521, 2009 WL 2413669, at *2 (D.N.J. Aug. 4, 2009) (requiring written notice to trigger FCBA liability); *Alves v. Verizon*, No. 8-3196, 2010 WL 2989988, at *8 (D.N.J. July 27, 2010) (same).

---

[6] The FCBA is codified at 15 U.S.C. §§ 1666-1666j.

Here, Capital One's duties under the FCBA were not triggered because Plaintiff failed to dispute the purported billing error.[7] Indeed, rather than contest the Microsoft charge, Plaintiff paid it in full. Because Plaintiff failed to provide written notice to Capital One within the 60-day statutory deadline, his FCBA claim fails as a matter of law.

### C. Electronic Funds Transfer Act

Congress enacted the Electronic Funds Transfer Act ("EFTA") in 1978 to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Whereas the Fair Credit Billing Act applies to credit cards, the EFTA governs "electronic fund transfers"[8] involving a consumer's "account" – defined by statute as a "demand deposit, savings deposit, or other asset account." *Id.* § 1693a(2). The EFTA does not generally govern credit card transactions. *Sanford v. Memberworks, Inc.*, No. 2-601, 2008 WL 4482159, at *2-3 (S.D. Cal. Sept. 30, 2008).

Plaintiff asserts that, "[o]n information and belief, Defendant's conduct as described in this Complaint and failure to keep accurate records violate the EFTA and/or constitute prohibited practices by an issuer under the EFTA." Compl. ¶ 83. As an initial matter, Plaintiff's broad invocation of the EFTA is insufficient as a matter of law because it fails to specify "which

---

[7] In Plaintiff's response to Defendant's motion, he includes a new assertion regarding a July 2007 billing error. Pl.'s Opp'n Br., ECF 8 at 18. I will disregard this claim, as a plaintiff may not amend his complaint by way of opposing a motion to dismiss. *Frederico v. Home Depot*, 507 F.3d 188, 201-202 (3d Cir. 2007). Moreover, the Court is mystified as to how a dispute from 17 years ago is at all relevant to this matter.

[8] Electronic fund transfers include "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). Common examples include "point-of-sale transfers, automated teller machine [ATM] transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone." *Id.*

provisions confer a cause of action."[9]  *Perlberger Law Assocs., P.C. v. Wells Fargo Bank, N.A.*, 552 F. Supp. 3d 490, 494 n.3 (E.D. Pa. 2021) (McHugh, J.).  Moreover, because Plaintiff's claims arise out of a credit transaction, his claims do not come within the protection of the EFTA.  Plaintiff has not – and cannot – state a plausible EFTA claim, and I am therefore obligated to dismiss the claim with prejudice.

### D. Breach of Contract[10]

Plaintiff also advances several state law claims, including breach of express and implied contract.[11]  Plaintiff alleges the following violations of Capital One's Customer Agreement: (1) failure to "disclose[] . . . that access to the credit and credit-related services purchased from Capital One could be interrupted by New Cards the customer never requested"; (2) the "unsolicited

---

[9] In Plaintiff's response to Defendant's motion, he alleges that Capital One violated sections 1693(i) and 1693(j) of the EFTA.  Pl.'s Opp'n Br., ECF 8 at 28-30.  As discussed, a plaintiff may not amend his complaint by way of opposing a motion to dismiss.  *Frederico*, 507 F.3d at 201-202.  Regardless, Plaintiff's conclusory assertion that "Capital One by electronic means clearly billed Plaintiff's credit account and fully processed Billing Merchant Microsoft's charge even after mailing the malfunctioning replacement Mastercard," Pl.'s Opp'n Br., ECF 8 at 30, does not state a claim under the EFTA.

[10] The Customer Agreement contains a choice of law provision, which states: "[t]his Agreement is governed by applicable federal law and by Virginia law."  *See* Customer Agreement, ECF 1-1 at 49.  Accordingly, I will assess Plaintiff's breach of contract claim under Virginia law.  *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.").  As to Plaintiff's remaining state law tort claims, I will apply Pennsylvania law.  *See Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994) ("Contractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship.").  The choice of law provision here, like the provision in *Jiffy Lube*, is limited on its face to "this Agreement," and therefore does not govern Plaintiff's tort claims.

[11] "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written."  *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015).  Plaintiff has not pled sufficient facts to support a theory of implied breach of contract, presented in the Complaint as a "breach[] [of] the implied duty of good faith and fair dealing by knowingly forcing the redundant account verifications,[] inaccurately billing [the -1249 card], and demanding the relinquishment of Plaintiff's appellate rights under Local Rule 1001."  Compl. ¶ 28.  Accordingly, I consider only Plaintiff's claim for breach of the Customer Agreement.  *See* Customer Agreement, ECF 1-1 at 45-50.

transmission of the [-8219] card"; (3) "prior failure to disclose material credit terms"; (4) "refusal to restore access to the suspended $5,000 [in] funds within a reasonable time frame"; (5) "conflicting charges to [the -1249 card]"; and (6) "failure to institute reasonable policies to prevent the known replacement card issue from recurring." Compl. ¶¶ 23-24.

To plead breach of contract under Virginia law, a plaintiff must establish: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, N.A.*, 289 Va. 321, 770 S.E. 2d 491, 493 (Va. 2015).

As an initial matter, under the Customer Agreement, Capital One is authorized to request basic identifying information before authenticating a user's credit account.[12] Where an individual does not provide that information, the Agreement explicitly states that Capital One "may restrict or close your Account if we cannot verify your information, or if you do not provide it as requested."[13] The basis on which Capital One closed Plaintiff's -8219 credit account was that it could not verify his information.[14]

It is worth noting that several of Plaintiff's breach of contract allegations imply that his unsuccessful efforts to authenticate the -8219 credit card resulted in the closure of *all* of Plaintiff's Capital One credit accounts, including his -1249 account. Not so.[15] Capital One closed only the

---

[12] Customer Agreement, ECF 1-1 at 45. Under the Agreement, Capital One may request a customer's name, address, date of birth, Social Security number or other government identification number, telephone number, and employment and income information.

[13] *Id.*

[14] *See* Capital One Letter, ECF 4-2 at 95 ("Recently, we sent you a letter saying you and any Authorized Users no longer could make transactions on your [-8219] account until you verified some of your information. We've closed your account because we still haven't been able to get that information from you.").

[15] *See* n. 2, *supra*.

-8219 account, to which Plaintiff never had access, and – it bears repeating – Plaintiff never requested.

Regardless, Plaintiff does not allege facts with the requisite specificity to maintain a breach of contract claim. First, he has not identified the provisions of the Customer Agreement that Capital One violated. And second, his contention – that he incurred $5,000 in damages based on an inability to access a line of credit for a credit card he never requested – does not state a plausible claim for damages. Plaintiff fails to state a breach of contract claim, and this claim will be dismissed.

### E. Negligence

Plaintiff contends that Capital One's "fail[ure] to act with the level of care a reasonably prudent bank would have exercised under similar circumstances . . . proximately caused the harms suffered by Plaintiff, including actual damages, special damages, compensatory damages and consequential damages due to the loss of account access." Compl. ¶ 73.

Under Pennsylvania's gist of the action doctrine, a plaintiff is prohibited from recasting breach of contract claims as tort claims. *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009). A negligence claim is precluded by the gist of the action doctrine "when the duties owed to the plaintiff arise from a contractual relationship between the parties, rather than from a larger, social policy." *Bancorp Bank v. Lawyers Title Ins. Corp.*, No. 13-6103, 2014 WL 3325861, at *8 (E.D. Pa. July 8, 2014) (Slomsky, J.).

Plaintiff's negligence claim arises out of the same allegations as his breach of contract claim, and is therefore barred by the gist of the action doctrine. Even if Plaintiff's negligence claim were not precluded by the gist of the action doctrine, he has failed to allege a plausible theory of damages. This claim will therefore be dismissed.

### F. Breach of Fiduciary Duty

Plaintiff alleges that Capital One "violated its fiduciary duties to [Plaintiff] by failing to identify, investigate and institute procedures for replacement cards to prevent the known recurring defects with its New Cards and the associated unreasonable delays in accessing bargained-for credit funds." Compl. ¶ 65.

Under Pennsylvania law, it is well established that "a lender is not a fiduciary of the borrower." *Lapensohn v. Hudson City Sav. Bank*, No. 20-680, 2020 WL 4704948, at *8 (E.D. Pa. Aug. 13, 2020) (Gallagher, J.) (quoting *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992)); *Bucci v. Wachovia Bank, N.A.*, No. 8-1478, 2009 WL 1740503, at *3 (E.D. Pa. June 17, 2009) (Brody, J.) ("The relationship between a customer and a bank is not a fiduciary one.") (quotations omitted).[16] Additionally, "[a] breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008) (Brody, J.).

Plaintiff's breach of fiduciary duty claim will be dismissed because he has not alleged facts sufficient to give rise to a fiduciary relationship, and because the claim arises out of the same allegations as his breach of contract claim.

### G. Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Plaintiff asserts that Capital One engaged in a range of "deceptive business practice[s]" in violation of Sections 201-2(4)(v), (vii), and (xxi) of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Compl. ¶¶ 48-61. To establish a cause of action under the UTPCPL, a plaintiff must "demonstrate (1) ascertainable loss of money or property, real or

---

[16] While "a fiduciary relationship may arise if the lender gains substantial control over the borrower's business affairs," *Temp-Way Corp.*, 139 B.R. at 318, Plaintiff has not alleged facts to support a heightened duty on the part of Capital One.

personal, (2) as the result of the defendant's prohibited conduct under the statute." *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 633 (E.D. Pa. 2019) (McHugh, J.). To allege an ascertainable loss, "[a] plaintiff must be able to point to money or property that he would have had but for the defendant's fraudulent actions." *Benner v. Bank of America, N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) (Slomsky, J.).

Plaintiff has not alleged an ascertainable loss. His contention that he suffered financial harm based on an inability to access a line of credit for a credit card he never requested – and which he would have been required to pay back in a timely fashion – is palpably insufficient to state a claim under the UTPCPL. This claim will be dismissed.

## IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted on all counts. Dismissal is with prejudice, as amendment would be futile because this court sees no plausible basis on which Plaintiff can possibly state any claim based upon his inability to activate a credit card he alleges he never requested in the first place. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An appropriate order follows.

  /s/ Gerald Austin McHugh  
United States District Judge